# IN THE UNITED STATES DISTRICT COURT

# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**ALLEN ROBERTS,**

    **Plaintiff,**

    **v.**

                            **Civil Action No.**

                            1:25-cv-1218

**TROOPER ALEXANDER KYDD, in his individual capacity,**

**TROOPER JOHN THOMAS, in his individual capacity,**

**OFFICER NOVAK, in his individual capacity,**

**OFFICER SABO, in his individual capacity,**

**PENNSYLVANIA STATE POLICE,**

    **Defendants.**

FILED
HARRISBURG, PA

JUL 07 2025

PER_____*MPA*_____
DEPUTY CLERK

# COMPLAINT – CIVIL RIGHTS ACTION

## (42 U.S.C. § 1983)

## I. INTRODUCTION

1. This is a civil rights action brought under 42 U.S.C. § 1983 seeking redress for violations of Plaintiff's constitutional rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

2. Plaintiff Allen Roberts was subjected to an unlawful and prolonged traffic stop, coercive demands, excessive force, and an arrest without probable cause. These actions were carried out by Pennsylvania State Police and Harrisburg Bureau of Police officers, resulting in significant harm to Plaintiff's liberty, body, reputation, and employment.

3. Plaintiff seeks compensatory and punitive damages, declaratory relief, and any further relief the Court deems just.

## II. JURISDICTION AND VENUE

4. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343 because Plaintiff's claims arise under the Constitution and federal law.

5. Venue is proper under 28 U.S.C. § 1391(b) because all relevant events occurred in Dauphin County, Pennsylvania, within the Middle District of Pennsylvania.

## III. PARTIES

6. Plaintiff Allen Roberts is an adult citizen of Pennsylvania residing in Harrisburg.

7. Defendant Trooper Alexander Kydd is a Pennsylvania State Police officer, sued in his individual capacity, who acted under color of state law at all relevant times.

8. Defendant Trooper John Thomas is also a Pennsylvania State Police officer, sued in his individual capacity, who arrived on the scene and participated in the arrest.

9. Defendant Officer Christopher Novak is a Harrisburg Police Department officer, sued in his individual capacity.

10. Defendant Officer Adam Sabo is a Harrisburg Police Department officer, sued in his individual capacity.

11. Defendant Pennsylvania State Police is a law enforcement agency under the Commonwealth of Pennsylvania and is sued only for declaratory relief and Monell liability.

## IV. FACTUAL ALLEGATIONS

12. On August 26, 2023, Plaintiff Allen Roberts was lawfully driving a 2012 BMW X6 in Harrisburg, Pennsylvania, when he was stopped by Trooper Alexander Kydd for an alleged red-light violation.

13. Trooper Kydd stated that he would issue a warning. Plaintiff was cooperative and provided his license, registration, and insurance.

14. All of Plaintiff's documents checked out: his license, insurance, and registration were valid, and no warrants were outstanding. No odor, slurred speech, or erratic driving was observed.

15. Despite this, Trooper Kydd proceeded to run a criminal history check. Upon discovering Plaintiff's past convictions (unrelated to driving), he called for backup.

16. Officers Novak and Sabo from the Harrisburg Police Department responded, followed shortly by Trooper John Thomas.

17. (Kydd MVR 00:10:30–00:10:51) Dash cam audio captures Trooper Kydd telling Harrisburg officers that he has his own backup on the way and asking them to stay.

18. (Kydd MVR 00:10:56) Trooper Kydd then returned to Plaintiff's vehicle wearing gloves, still without issuing a citation.

19. Without advising Plaintiff of any investigation, Kydd asked him to perform field sobriety tests.

20. Plaintiff declined, stating, "That's not the reason you pulled me over. If you're not going to give me a warning, give me my citation so I can go."

21. Plaintiff lawfully refused all tests, asserted he was not impaired, and offered to leave the vehicle parked and call for a ride. Kydd rejected these offers.

22. Kydd never informed Plaintiff he was under arrest or detention, nor read any warnings under the Implied Consent Law.

23. Kydd claimed to smell cannabis and said Plaintiff's eyes were red and ashes were on the dash. Plaintiff produced a valid medical marijuana card. No contraband was found.

24. (Thomas MVR 00:27:43) Dash cam audio records Harrisburg officers saying Plaintiff was cooperative until refusing field tests.

25. (Thomas MVR 00:27:48) Trooper Thomas stated, "I'll tear him out of the car," before any arrest or resistance occurred.

26. (Kydd MVR 00:16:27–00:18:20) Plaintiff asked repeatedly why he was being held, requested a supervisor, and asked Trooper Thomas to preserve dash cam footage.

27. After Plaintiff was forcibly removed from the vehicle and tased, officers began discussing charging options. (Thomas MVR 00:27:43 onward.) Trooper Kydd referenced Plaintiff's medical marijuana card and alleged odor of cannabis as the only basis to pursue DUI charges. He acknowledged that the marijuana card would likely bar a search.

28. After Plaintiff had been forcibly removed from the vehicle, tased, and placed in handcuffs, Trooper Kydd partially read the DL-26 Implied Consent warnings aloud while Plaintiff was still on the ground, visibly distressed, confused, and in pain. No chemical test — blood, breath, or urine — was ever offered, and Plaintiff was never transported to a facility for testing. Harrisburg Police transported Plaintiff to Dauphin County Booking, not PSP. At no time did Trooper Kydd offer or attempt to transport Plaintiff for chemical testing. Later, Trooper Kydd falsely claimed that Plaintiff had refused a blood draw after being read the DL-26 form. Kydd further stated that he did not request a signature due to "the safety risk posed by removing handcuffs," but dash cam audio contradicts this version of events. Officers can be heard speculating about possible charges and hoping Plaintiff would "give blood" so Kydd would "get lucky," indicating that no test had occurred. Plaintiff never refused a test, because none was ever properly offered.

29. Despite saying he'd take Plaintiff to PSP barracks, Kydd allowed Harrisburg Police to transport Plaintiff to Dauphin County Booking in a van.

30. (Kydd MVR 00:19:13) Officers again discussed how to charge Plaintiff. No further evidence was gathered.

31. Kydd and Thomas forcibly opened Plaintiff's door. Plaintiff remained seated, calm, and unarmed. He was dragged out and tased multiple times. (Thomas MVR 00:27:43 onward.)

32. (Kydd MVR 00:29:00) Plaintiff can be heard asking, "Why am I being arrested?" No answer was given.

33. No blood, breath, or urine test was administered. No DL-26 was fully read or signed. No official arrest notice was given.

34. Plaintiff was transported to Dauphin County Booking and released later that night without receiving paperwork or charges.

35. The next day, Plaintiff called PSP and was transferred to Kydd, who admitted "that arrest wasn't supposed to happen" but became hostile when Plaintiff asked for officer names.

36. Kydd later submitted a DL-26 refusal to PennDOT and filed charges including DUI (controlled substance), resisting arrest, and several traffic violations.

37. No physical evidence supported intoxication. The resisting arrest charge was withdrawn. No test was performed.

38. Plaintiff later received a PennDOT Notice of Suspension for refusal to submit to chemical testing under 75 Pa. C.S. § 1547, based solely on the DL-26 form that Plaintiff never signed. See Exhibit F.

39. On January 13, 2025, Plaintiff was convicted of DUI and sentenced to 72 hours of electronic monitoring and probation.

40. As a result, Plaintiff lost his job as a delivery driver, his CDL, and his ability to operate as an independent contractor.

41. Plaintiff filed Internal Affairs complaints (IAD #23-2035 and #25-0749). PSP acknowledged receipt but declined investigation pending the outcome of criminal proceedings. See Exhibit D.

42. Dash cam footage from both vehicles confirms Plaintiff was nonviolent, did not flee, and asserted his rights respectfully throughout the incident.

43. On January 27, 2025, Plaintiff timely filed a Notice of Appeal with the Pennsylvania Superior Court (No. 58 MDA 2025) challenging the conviction. That appeal is pending.

## V. CLAIMS FOR RELIEF

**Count I** – Fourth Amendment: Unlawful Prolonged Detention

(42 U.S.C. § 1983 – Against Trooper Kydd and Participating Officers)

44. Plaintiff incorporates by reference all preceding paragraphs.

45. Under the Fourth Amendment, a traffic stop may not be prolonged beyond the time necessary to complete the mission of the stop without independent reasonable suspicion. See Rodriguez v. United States, 575 U.S. 348 (2015).

46. Plaintiff's documentation was valid, and there was no evidence of impairment, criminal activity, or outstanding warrants.

47. Despite this, Trooper Kydd prolonged the stop for over 25 minutes solely to investigate unrelated criminal history and coerce field sobriety testing.

48. This extended detention was unsupported by reasonable suspicion and violated Plaintiff's clearly established constitutional rights.

**Count II** – Fourth Amendment: Excessive Force

(42 U.S.C. § 1983 – Against Trooper Kydd, Trooper Thomas, Officer Novak, Officer Sabo)

49. Plaintiff incorporates by reference all preceding paragraphs.

50. Plaintiff was forcibly removed from his vehicle and tased while seated, calm, unarmed, and nonviolent.

51. Dash cam footage confirms that Plaintiff did not pose a threat, flee, or resist in a manner justifying the use of force.

52. The use of tasers and physical force under these circumstances was excessive and objectively unreasonable under Graham v. Connor, 490 U.S. 386 (1989).

53. The force inflicted physical injuries, emotional trauma, and violated Plaintiff's Fourth Amendment rights.

**Count III** – Fourth and Fourteenth Amendments: Unlawful Arrest and Retaliation

(42 U.S.C. § 1983 – Against All Individual Defendants)

54. Plaintiff incorporates by reference all preceding paragraphs.

55. Plaintiff was arrested without probable cause, without being read his rights, and without any chemical test or refusal that would support a DUI arrest.

56. The DL-26 Implied Consent warning was only partially read after Plaintiff was already tased, handcuffed, and seated on the ground. No chemical test was offered, and Plaintiff never refused one.

57. Despite this, Trooper Kydd submitted a DL-26 refusal to PennDOT, which resulted in license suspension under 75 Pa. C.S. § 1547. See Exhibit F.

58. The arrest was retaliatory and pretextual, based in part on Plaintiff's refusal to waive his rights and his prior criminal history, not actual probable cause.

59. These actions violated Plaintiff's rights under the Fourth and Fourteenth Amendments.

**Count IV** – Fourteenth Amendment: Equal Protection – Racial Profiling

(42 U.S.C. § 1983 – Against Trooper Kydd)

60. Plaintiff incorporates by reference all preceding paragraphs.

61. The vehicle Plaintiff was driving was registered to his girlfriend, Enique Mundy, a Black female with no criminal record. Trooper Kydd initially appeared prepared to issue only a warning based on the assumption that the registered owner—with a clean history—was the driver. However, upon realizing that the driver was a Black male with prior convictions, Trooper Kydd escalated the encounter into a criminal investigation without new justification.

62. Plaintiff was treated as presumptively suspicious due to race and criminal record, not actual conduct.

63. These actions constituted racial profiling and unequal treatment in violation of the Equal Protection Clause.

**Count V** – Fifth Amendment: Due Process – Fabrication and Abuse of Process

(42 U.S.C. § 1983 – Against Trooper Kydd)

64. Plaintiff incorporates by reference all preceding paragraphs.

65. Trooper Kydd fabricated suspicion by claiming cannabis odor and bloodshot eyes, despite Plaintiff's valid medical marijuana card and lack of impairment.

66. Officers discussed charging Plaintiff before any test or lawful basis existed, as captured on dash cam footage.

67. Trooper Kydd later falsely reported that Plaintiff refused chemical testing, even though no meaningful opportunity was provided. No test was offered or conducted.

68. These fabrications led to unjustified prosecution and license suspension under false pretenses. See Exhibit F.

69. These actions constituted abuse of process and a violation of due process rights under the Fifth and Fourteenth Amendments.

**Count VI** – State Law: Assault and Battery

(Against All Individual Defendants)

70. Plaintiff incorporates by reference all preceding paragraphs.

71. Defendants used intentional and unjustified physical force, including dragging Plaintiff from his car and deploying a taser.

72. These actions caused bodily injury and constituted unlawful assault and battery under Pennsylvania law.

**Count VII** – State Law: False Imprisonment

(Against All Individual Defendants)

73. Plaintiff incorporates by reference all preceding paragraphs.

74. Plaintiff was unlawfully detained and restrained without probable cause, explanation, or opportunity to leave.

75. He was never officially arrested, charged, or told the reason for his detention until hours later.

76. These facts support a claim for false imprisonment under Pennsylvania law.

**Count VIII** – Monell Liability – Policy or Practice

(42 U.S.C. § 1983 – Against Pennsylvania State Police)

77. Plaintiff incorporates by reference all preceding paragraphs.

78. The Pennsylvania State Police (PSP) maintained policies, customs, and practices that directly caused or contributed to the constitutional violations described above.

79. These include:

a. Failing to properly train officers on lawful traffic stops and use of force.

b. Encouraging arrests without probable cause or chemical testing.

c. Tolerating submission of DL-26 refusals where no test was offered.

d. Retaliating against individuals who assert constitutional rights.

e. Allowing racial profiling and escalation based on prior convictions.

80. These policies reflect deliberate indifference and give rise to Monell liability under 42 U.S.C. § 1983.

## VI. DAMAGES

81. As a direct and proximate result of Defendants' unlawful actions, Plaintiff suffered and continues to suffer:

a. Physical injuries, including taser burns, contusions, and bodily harm.

b. Emotional distress, including anxiety, trauma, depression, and psychological harm.

c. Loss of employment, including termination from his position as a delivery driver.

d. Suspension of driving privileges, including the loss of Plaintiff's Commercial Driver's License (CDL).

e. Loss of self-employment opportunities, including cancellation of independent contracts.

f. financial harm, including lost income, legal costs, fines, and fees.

g. Reputational damage affecting future employment, housing, and community standing.

h. Constitutional injuries, including unlawful detention, arrest without cause, use of excessive force, and due process violations.

i. License suspension due to a falsely reported chemical test refusal, without a valid DL-26 warning or test offer (see Exhibit F).

j. Permanent damage to career trajectory, mobility, and ability to provide for himself and his family.

82. These damages are documented by dash cam footage, medical records, photos, employment termination documents, the official PennDOT suspension notice, and PSP and court records.

83. Plaintiff continues to experience long-term effects as a result of Defendants' actions and seeks full legal and equitable relief available under law.

## VII. PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court:

1. Enter judgment in favor of Plaintiff and against all Defendants on all claims.

2. Award compensatory damages in excess of $75,000 for physical, emotional, financial, and constitutional injuries.

3. Award punitive damages against the individual Defendants in their personal capacities to deter future misconduct.

4. Declare that Defendants' conduct violated Plaintiff's rights under the U.S. Constitution.

5. Enter appropriate injunctive relief requiring the Pennsylvania State Police to revise policies, training, and oversight related to traffic stops, chemical test procedures, and use of force.

6. Vacate or correct any state records falsely reflecting chemical test refusal under 75 Pa.C.S. § 1547.

7. Award Plaintiff reasonable costs and attorney's fees under 42 U.S.C. § 1988 (if counsel later enters appearance).

8. Grant such other and further relief as this Court deems just and proper.

## VIII. JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Allen Roberts

Pro Se Plaintiff

2102 Swatara Street

Harrisburg, PA 17104

(717) 265-6847

robertsallen13@gmail.com

July 7, 2025

CERTIFICATE OF SERVICE

I hereby certify that on this _7_ day of _July_, 2025, I caused a true and correct copy of the foregoing Civil Complaint, Exhibits, Civil Cover Sheet, Motion to Proceed in Forma Pauperis, and Summons forms to be served via U.S. Mail, postage prepaid, upon the following defendants:

- Civil Complaint

- Motion to Proceed in Forma Pauperis

- Proposed Summons

- Exhibits A through F


Trooper Alexander Kydd

Pennsylvania State Police – Harrisburg Station

8000 Bretz Drive

Harrisburg, PA 17112


Trooper John Thomas

Pennsylvania State Police – Harrisburg Station

8000 Bretz Drive

Harrisburg, PA 17112


Officer Novak

Harrisburg Bureau of Police

123 Walnut Street

Harrisburg, PA 17101


Officer Sabo

Harrisburg Bureau of Police

123 Walnut Street Harrisburg, PA 17101

Pennsylvania State Police (PSP)

Attn: Legal Department

1800 Elmerton Avenue

Harrisburg, PA 17110

Respectfully submitted,

Allen Roberts

Pro Se Plaintiff

2102 Swatara St.

Harrisburg, Pa.17104

717-265-6847

Robertsallen13@gmail.com

July 7, 2025